MOTOR VEHICLE MANUFACTURERS ASSOCIATION OF THE UNITED STATES, INC., ET AL. *v.* WILLIAM A. O'NEILL ET AL.
(12985)

PETERS, C. J., SHEA, SANTANIELLO, JACOBSON and F. HENNESSY, Js.

Argued February 10—decision released March 31, 1987

*Mark R. Kravitz,* with whom were *Michael K. Brown* and, on the brief, *William H. Crabtree, Jane Lightfoot Wilson* and *Charles S. Lockwood II,* for the plaintiffs.

*Robert M. Langer,* assistant attorney general, with whom were *Garry Desjardins,* assistant attorney general, and, on the brief, *Joseph I. Lieberman,* attorney general, and *Janet A. Spaulding* and *William M. Rubenstein,* assistant attorneys general, for the defendants.

*John J. Woodcock III,* pro se, as intervening defendant.

PETERS, C. J. This case comes to us, by way of reservation, as a multifaceted challenge to the constitutional and statutory validity of legislation colloquially known as Lemon Law II that establishes arbitration panels for the settlement of disputes between consumers and manufacturers of new motor vehicles. The plaintiffs, Motor Vehicle Manufacturers Association of the United States, Inc., and a number of individual motor vehicle manufacturers and importers,[1] brought an action in six

---

[1] The plaintiffs are: Motor Vehicle Manufacturers Association of the United States, Inc., a not-for-profit trade association of motor vehicle manufacturers; American Motors Corporation; Chrysler Corporation; Ford Motor Company; Volkswagen of America, Inc.; Automobile Importers of America, Inc., a not-for-profit trade association of motor vehicle importers; Alfa Romeo, Inc.; American Honda Motor Company, Inc.; American Isuzu Motors, Inc.; BMW of North America, Inc.; Fiat Auto U.S.A., Inc.; Jaguar Cars, Inc.; Lotus Performance Cars; Mazda Motors of America (Central), Inc.; Mitsubishi Motor Sales of America, Inc.; Nissan Motor Corporation in U.S.A.; Peugeot Motors Corporation in U.S.A.; Porsche Cars North America, Inc.; Renault U.S.A., Inc.; Rolls Royce Motors, Inc.; Saab-Scania of America, Inc.; Subaru of America, Inc.; Toyota Motor Sales, U.S.A., Inc.; and Volvo of America Corporation.

counts[2] seeking declaratory and injunctive relief from Public Acts 1984, No. 84-338, codified as General Statutes §§ 42-181 through 42-184, both in its initial form and as amended in 1985. The complaint named as defendants the governor, William A. O'Neill, and other governmental officials and agencies charged with enforcing the act.[3] State Representative John J. Woodcock III, a legislative sponsor of Lemon Law II, was permitted to intervene as a party defendant. At the joint request of all the parties, the trial court, *Satter, J.,* granted a motion for reservation upon stipulated facts to have this court resolve nine questions of law about the validity of the statutes in question.[4] Because we conclude that the questions were improvidently reserved, we remand the case for trial.

---

[2] The complaint contains the following counts: count one alleges that Public Acts 1984, No. 84-338, violates the right of trial by jury guaranteed by article first, § 19, of the Connecticut constitution; count two alleges that the act violates the separation of powers established by article second and article fifth, § 1, of the Connecticut constitution; counts three and four allege that various provisions of the act violate rights to due process and equal protection guaranteed by the fourteenth amendment to the United States constitution and by article first, §§ 8, 10 and 20, of the Connecticut constitution; count five alleges that the act contains an unconstitutional delegation of legislative power to the commissioner of consumer protection, in violation of article third, § 1, of the Connecticut constitution; and count six alleges that the proceedings of the dispute resolution panels set up by the act to adjudicate consumer complaints must be governed by the applicable provisions of the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq. The complaint seeks, as relief: a permanent injunction on the theory that Public Acts 1984, No. 84-338, is unconstitutional; a declaratory judgment that the Uniform Administrative Procedure Act applies to all acts of department panels and all appeals therefrom; and whatever ancillary relief may be appropriate.

[3] The defendants are: Governor William A. O'Neill; Attorney General Joseph I. Lieberman; Commissioner of Consumer Protection Mary M. Heslin; the Department of Consumer Protection; Commissioner of Motor Vehicles Benjamin A. Muzio; and the Department of Motor Vehicles.

[4] The parties reserved the following nine questions of law for the advice of this court: "(a) Does Lemon Law II violate the portion of Article First, Section 19 of the Connecticut Constitution, as amended, which provides that the 'right of trial by jury shall remain inviolate'? (b) Does Lemon Law

All of the plaintiff manufacturers and importers extend express written warranties to the retail purchasers of their cars. Although these warranties vary in scope and in duration, they all conform to the same general pattern. For new vehicles, and/or selected components, the warrantors promise to pay for repair or replacement of defective factory materials or workmanship during a stipulated warranty period. The warranty period ranges from a minimum of twelve months or

II's creation of arbitration panels violate the Separation of Powers provisions of Article Second and Article Fifth, Section 1 of the Connecticut Constitution, as amended? (c) Does the fact that automobile manufacturers subject to section 42-181 (b) of the Connecticut General Statutes must pay a $250 filing fee to defend a claim before an arbitration panel violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and the Due Process and Equal Protection Clauses of Article First, Sections 8, 10, and 20 of the Connecticut Constitution, as amended? (d) Does the fact that section 42-181 (b) of the Connecticut General Statutes does not require notice and an opportunity to be heard prior to the assessment of the $250 filing fee upon a manufacturer violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and the Due Process and Equal Protection Clauses of Article First, Sections 8, 10, and 20 of the Connecticut Constitution, as amended? (e) Does the fact that manufacturers subject to section 42-181 (b) of the Connecticut General Statutes must pay a $250 fee, and consumers must pay a $50 fee, violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution and the Due Process and Equal Protection Clauses of Article First, Sections 8, 10 and 20 of the Connecticut Constitution, as amended? (f) Does section 42-181 (g) of the Connecticut General Statutes constitute an unlawful delegation of legislative authority in violation of Article Third, Section 1 of the Connecticut Constitution, as amended? (g) Are all actions of arbitration panels under Lemon Law II and to which cases are referred by the defendant Department of Consumer Protection, and all appeals therefrom, subject to the provisions of the Connecticut Administrative Procedure Act, C.G.S. Section 4-166 et seq.? (h) If the answer to question (g) is in the affirmative, does the General Assembly's enactment of section 42-181 (c) of the Connecticut General Statutes, (as amended by Public Act No. 85-331), exempt the actions of arbitration panels, and all appeals therefrom, from the Connecticut Administrative Procedure Act, C.G.S. section 4-166 et seq.? (i) If the answer to question (h) is in the negative, do the procedures set forth in Lemon Law II and the Regulations violate the Connecticut Administrative Procedure Act, C.G.S. section 4-166 et seq.?"

12,000 miles (whichever occurs first) to a maximum of five years or 50,000 miles. The warranty may also contain a provision for a deductible.

Informal dispute resolution mechanisms to resolve consumer complaints about consumer products received federal encouragement in 1975, when Congress enacted the Magnuson-Moss Warranty Act. Pub. L. No. 93-637, title I, 15 U.S.C. § 2301 et seq., and especially § 2310 (a). The federal trade commission has adopted standards for the operation of informal dispute settlement mechanisms. 16 C.F.R. § 703 et seq. In response, the plaintiffs Chrysler Corporation and Ford Motor Company have established their own informal dispute settlement mechanisms for the settlement of disputes with consumers regarding applicable warranties, among other matters. In addition, the Council of Better Business Bureaus, Inc., administers an "Auto Line" dispute settlement mechanism which fourteen other manufacturers offer to consumers.

In 1982, the Connecticut legislature enacted Public Acts 1982, No. 82-287 (Lemon Law I). That act is codified as General Statutes § 42-179.[5] For consumer

---

[5] "[General Statutes] Sec. 42-179. NEW MOTOR VEHICLE WARRANTIES. (a) As used in this section and section 42-180: (1) 'Consumer' means the purchaser, other than for purposes of resale, of a motor vehicle, any person to whom such motor vehicle is transferred during the duration of an express warranty applicable to such motor vehicle, and any other person entitled by the terms of such warranty to enforce the obligations of the warranty; and (2) 'motor vehicle' means a passenger motor vehicle or a passenger and commercial motor vehicle, as defined in section 14-1, which is sold in this state.

"(b) If a new motor vehicle does not conform to all applicable express warranties, and the consumer reports the nonconformity to the manufacturer, its agent or its authorized dealer, (1) during the term of such express warranties or during the period of one year following the date of original delivery of the motor vehicle to a consumer whichever is the earlier date or (2) in the case of a motor vehicle sold on or after July 1, 1984, during the period of two years following such date of original delivery or during the first eighteen thousand miles of operation, whichever is the earlier date,

buyers of new motor vehicles, the act provides supplemental remedies of repair, replacement and refund to facilitate the enforcement of express warranties

the manufacturer, its agent or its authorized dealer shall make such repairs as are necessary to conform the vehicle to such express warranties, notwithstanding the fact that such repairs are made after the expiration of the appropriate time period.

"(c) No consumer shall be required to notify the manufacturer of a claim under this section and sections 42-181 to 42-184, inclusive, unless the manufacturer has clearly and conspicuously disclosed to the consumer, in the warranty or owner's manual, that written notification of the nonconformity is required before the consumer may be eligible for a refund or replacement of the vehicle. The manufacturer shall include with the warranty or owner's manual the name and address to which the consumer shall send such written notification.

"(d) If the manufacturer, or its agents or authorized dealers are unable to conform the motor vehicle to any applicable express warranty by repairing or correcting any defect or condition which substantially impairs the use, safety or value of the motor vehicle to the consumer after a reasonable number of attempts, the manufacturer shall replace the motor vehicle with a new motor vehicle acceptable to the consumer, or accept return of the vehicle from the consumer and refund to the consumer the following: (1) The full contract price including, but not limited to charges for undercoating, dealer preparation and transportation, and installed options, (2) all collateral charges, including, but not limited to, sales tax, license and registration fees, and similar government charges, (3) all finance charges incurred by the consumer after he first reports the nonconformity to the manufacturer, agent or dealer and during any subsequent period when the vehicle is out of service by reason of repair, and (4) all incidental damages as defined in section 42a-2-715, less a reasonable allowance for the consumer's use of the vehicle. No authorized dealer shall be held liable by the manufacturer for any refunds or vehicle replacements in the absence of evidence indicating that dealership repairs have been carried out in a manner inconsistent with the manufacturers' instructions. Refunds shall be made to the consumer, and lienholder if any, as their interests may appear. A reasonable allowance for use shall be that amount obtained by multiplying the total contract price of the vehicle by a fraction having as its denominator one hundred thousand and having as its numerator the number of miles that the vehicle traveled prior to the manufacturer's acceptance of its return. It shall be an affirmative defense to any claim under this section (1) that an alleged nonconformity does not substantially impair such use, safety or value or (2) that a nonconformity is the result of abuse, neglect or unauthorized modifications or alterations of a motor vehicle by a consumer.

"(e) It shall be presumed that a reasonable number of attempts have been undertaken to conform a motor vehicle to the applicable express warran-

made by the manufacturers of such vehicles. These supplemental remedies come into play whenever a manufacturer or authorized dealer, after a reasonable number of repair attempts, is unable substantially to conform a new vehicle to the terms of the express warranty. The validity of Lemon Law I is not an issue in the present litigation.

ties, if (1) the same nonconformity has been subject to repair four or more times by the manufacturer or its agents or authorized dealers (A) within the express warranty term or during the period of one year following the date of original delivery of the motor vehicle to a consumer, whichever is the earlier date or (B) in the case of a motor vehicle sold on or after July 1, 1984, during the period of two years following such date of original delivery or during the first eighteen thousand miles of operation, whichever is the earlier date, but such nonconformity continues to exist or (2) the vehicle is out of service by reason of repair for a cumulative total of thirty or more calendar days during such term or during such period, whichever is the earlier date. The term of an express warranty, such one-year period, such two-year period and such thirty-day period shall be extended by any period of time during which repair services are not available to the consumer because of a war, invasion, strike or fire, flood or other natural disaster.

"(f) No motor vehicle which is returned to the manufacturer and which requires replacement or refund shall be resold in the state without clear and conspicuous written disclosure of the fact that such motor vehicle was so returned prior to resale. The commissioner of motor vehicles shall, by regulations adopted in accordance with the provisions of chapter 54, prescribe the form and content of any such disclosure statement and establish provisions by which the commissioner may remove such written disclosure after such time as the commissioner may determine that such motor vehicle is no longer defective.

"(g) All express and implied warranties arising from the sale of a new motor vehicle shall be subject to the provisions of part 3 of article 2 of title 42a.

"(h) Nothing in this section shall in any way limit the rights or remedies which are otherwise available to a consumer under any other law.

"(i) If a manufacturer has established an informal dispute settlement procedure which is certified by the attorney general as complying in all respects with the provisions of Title 16 Code of Federal Regulations Part 703, as in effect on October 1, 1982, and with the provisions of subsection (b) of section 42-182, the provisions of subsection (d) of this section concerning refunds or replacement shall not apply to any consumer who has not first resorted to such procedure."

In 1984, the legislature enacted Public Acts 1984, No. 84-338 (Lemon Law II), now codified as General Statutes §§ 42-181 through 42-184. The purpose of Lemon Law II is to provide, for consumer purchasers of new motor vehicles, an alternative to civil litigation. The key provision is § 42-181,[6] which authorizes the department of consumer protection to establish "an independent arbitration procedure for the settlement of disputes between consumers and manufacturers of

[6] "[General Statutes] Sec. 42-181. DEPARTMENT ARBITRATION PROCEDURE. RECORDS. APPEALS. (a) The department of consumer protection, shall provide an independent arbitration procedure for the settlement of disputes between consumers and manufacturers of motor vehicles which do not conform to all applicable warranties under the terms of section 42-179. The commissioner shall establish one or more automobile dispute settlement panels which shall consist of three members appointed by the commissioner of consumer protection, only one of whom may be directly involved in the manufacture, distribution, sale or service of any product. Members shall be persons interested in consumer disputes and shall serve without compensation for terms of two years at the discretion of the commissioner. In lieu of referring an arbitration dispute to a panel established under the provisions of this section, the department of consumer protection may refer an arbitration dispute to the American Arbitration Association in accordance with regulations adopted in accordance with the provisions of chapter 54.

"(b) An owner of any motor vehicle purchased at any time on or after October 1, 1984, which fails to conform to such applicable warranties as defined in said section 42-179, may bring a grievance to an arbitration panel if the manufacturer of the vehicle has not established an informal dispute settlement procedure which the attorney general has certified as complying in all respects with the requirements of said section 42-179. The consumer may initiate a request for arbitration by calling a toll-free telephone number designated by the commissioner or by requesting an arbitration hearing in writing. The consumer shall file, on forms prescribed by the commissioner, any information deemed relevant to the resolution of the dispute and shall return the form accompanied by a filing fee of fifty dollars. Such complaint form shall offer the consumer a choice of presenting any subsequent testimony orally or in writing. The filing fee shall be refunded if the arbitration panel determines that a complaint does not allege a violation of any applicable warranty under the requirements of said section 42-179. Upon acceptance of the complaint, the commissioner shall notify the manufacturer of the filing of a request for arbitration and shall obtain from the manufacturer, in writing on a form prescribed by the commis-

motor vehicles which do not conform to all applicable warranties under the terms of section 42-179." Whether to invoke arbitration under the act is a deci-

sioner, any information deemed relevant to the resolution of the dispute. The manufacturer shall return the form within fifteen days of receipt, together with a filing fee of two hundred fifty dollars.

"(c) The department of consumer protection shall investigate, gather and organize all information necessary for a fair and timely decision in each dispute. The commissioner may issue subpoenas on behalf of any arbitration panel to compel the attendance of witnesses and the production of documents, papers and records relevant to the dispute. The department shall forward a copy of all written testimony, including all documentary evidence, to an independent technical expert certified by the National Institute of Automotive Service Excellence or having a degree or other credentials from a nationally recognized organization or institution attesting to automotive expertise, who shall review such material and be available to advise and consult with the arbitration panel. An expert shall sit as a nonvoting member of an arbitration panel whenever oral testimony is presented. Such experts may be recommended by the commissioner of motor vehicles at the request of the commissioner of consumer protection. An arbitration panel shall, as expeditiously as possible, but not later than sixty days after the time the consumer files the complaint form together with the filing fee, render a fair decision based on the information gathered and disclose its findings and the reasons therefor to the parties involved. The decision shall provide appropriate remedies, including, but not limited to one or more of the following:

"(1) Repair of the vehicle;

"(2) Replacement of the vehicle with an identical or comparable new vehicle acceptable to the consumer;

"(3) Refund of the full contract price, plus collateral charges as specified in subsection (d) of said section 42-179;

"(4) Reimbursement for expenses and compensation for incidental damages as specified in subsection (d) of said section 42-179;

"(5) Any other remedies available under the applicable warranties, section 42-179, this section and sections 42-182 to 42-184, inclusive, or the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act, 88 Stat. 2183 (1975), 15 USC 2301 et seq., as in effect on October 1, 1982.

"The decision shall specify a date for performance and completion of all awarded remedies. Notwithstanding any provision of the general statutes or any regulation to the contrary, the department of consumer protection shall not amend, reverse, rescind or revoke any decision or action of an arbitration panel. The department shall contact the consumer, within ten working days after the date for performance, to determine whether performance has occurred. The manufacturer shall act in good faith in abiding by any department decision. In addition, if the decision is accepted by

sion for the consumer: only the consumer may initiate arbitration proceedings, and the consumer may decide whether to accept the decision of the arbitration panel.

the consumer, either party to the arbitration may make application to the superior court for the judicial district in which one of the parties resides, or, when the court is not in session, any judge thereof for an order confirming, vacating, modifying or correcting any award, in accordance with the provisions of sections 52-417, 52-418, 52-419 and 52-420. If it is determined by the court that the manufacturer has acted without good cause in bringing an appeal of an award, the court, in its discretion, may grant to the consumer his costs and reasonable attorney's fees.

"(d) The department shall maintain such records of each dispute as the commissioner may require, including an index of disputes by brand name and model. The department shall, at intervals of no more than six months, compile and maintain statistics indicating the record of manufacturer compliance with arbitration decisions and the number of refunds or replacements awarded. A copy of the statistical summary shall be filed with the commissioner of motor vehicles and shall be considered by him in determining the issuance of any manufacturer license as required under section 14-67a. The summary shall be a public record.

"(e) If a manufacturer has not established an informal dispute settlement procedure certified by the attorney general as complying with the requirements of said section 42-179, public notice of the availability of the department's automobile dispute settlement procedure shall be prominently posted in the place of business of each new car dealer licensed by the department of motor vehicles to engage in the sale of such manufacturer's new motor vehicles. Display of such public notice shall be a condition of licensure under sections 14-52 and 14-64. The commissioner of consumer protection shall determine the size, type face, form and wording of the sign required by this section, which shall include the toll-free telephone number and the address to which requests for the department's arbitration services may be sent.

"(f) Any consumer injured by the operation of any procedure which does not conform with procedures established by a manufacturer pursuant to subsection (b) of section 42-182 and the provisions of Title 16 Code of Federal Regulations Part 703, as in effect on October 1, 1982, may appeal any decision rendered as the result of such a procedure by requesting arbitration de novo of the dispute by an arbitration panel. Filing procedures and fees for appeals shall be the same as those required in subsection (b) of this section. The findings of the manufacturer's informal dispute settlement procedure may be admissible in evidence at such arbitration panel hearing and in any civil action subsequently arising out of any warranty obligation or matter related to the dispute. Any consumer so injured may, in addition, request the attorney general to investigate the manufacturer's procedure to determine whether its certification shall be suspended or revoked

General Statutes § 42-181 (b), (c). Once a consumer has brought a grievance to the statutory arbitration panel, the manufacturer must cooperate, in good faith, with all aspects of the arbitration procedure. General Statutes §§ 42-181 (b), (c) and 42-184. The department of consumer protection has promulgated the necessary regulations, effective December 18, 1984, to create the automobile dispute settlement panels mandated by Lemon Law II. Regs., Conn. State Agencies § 42-1-181 et seq.

The legislature amended both Lemon Law I and Lemon Law II in 1985, when it enacted Public Acts 1985, No. 85-331, codified as General Statutes § 41-179a and as amendments to §§ 42-179, 42-181, 42-182 and 42-185. The amendments, in addition to making a number of procedural changes, empowered the attorney general to certify a manufacturer's informal dispute settlement mechanism as complying with 16 C.F.R. § 703 et seq., thus avoiding the state's arbitration panels under Lemon Law II. To date, no manufacturer has obtained such certification. A report of the attorney general that has been made an exhibit criticizes existing private programs for, inter alia, their "exclusion of consequential damages" from the arbitration process.

The state has begun to implement and enforce Lemon Law II according to its terms. Arbitration panels have heard and resolved numerous consumer complaints pursuant to the applicable statutory and regulatory pro-

after proper notice and hearing. The attorney general shall establish procedures for processing such consumer complaints and maintain a record of the disposition of such complaints, which record shall be included in the annual report prepared in accordance with the provisions of subsection (a) of section 42-182.

"(g) The commissioner of consumer protection shall adopt regulations, in accordance with the provisions of chapter 54, to carry out the purposes of this section. Written copies of the regulations and appropriate arbitration hearing procedures shall be provided to any person upon request."

visions. Examination of the available documentation concerning the decisions of the arbitration panels, contained in exhibit M, indicates that these arbitration proceedings appear to have been conducted and concluded, in large part, without their participants having raised any of the questions of constitutional validity and statutory conflict that the present plaintiffs are pursuing in this case.

With respect to each of the fourteen exhibits that accompany the stipulation,[7] each party has reserved the right to challenge the relevancy of its contents to the issues raised by the reservation. The plaintiffs, furthermore, "expressly do not stipulate to the truth or accuracy of any of the information or statements contained in Exhibits A through N." In effect, therefore, the stipulation furnishes us with no binding particulars about the nature of the consumer disputes whose arbitrability these plaintiffs resist, or about the arbitral remedies previously sought or awarded.

The stipulation as a whole, therefore, is simply a request for advice about the facial validity of Lemon Law II. The reserved questions raise a number of serious issues about the validity of Lemon Law II under

---

[7] The stipulation contains the following exhibits: Exhibit A consists of samples of express warranty provisions used by some of the plaintiff manufacturers. Exhibits B and I describe existing informal dispute settlement mechanisms offered by some of the plaintiffs to consumers. Exhibits C and D consist of transcripts of the legislative history of Lemon Law I and Lemon Law II. Exhibits E, F, G and H contain published reports by the attorney general, the office of legislative research, the office of fiscal analysis of the General Assembly, and the judicial department. Exhibit J is a copy of the administrative regulations that have been promulgated pursuant to Lemon Law II. Exhibit K is a copy of Public Acts 1985, No. 85-331, and exhibit L contains the relevant legislative history. Exhibit M consists of copies of all arbitration panel decisions rendered from October 1, 1984, to March 31, 1986. Exhibit N contains correspondence between the commissioner of consumer protection and the attorney general about the propriety of refunding the fee of a manufacturer who was improperly cited to appear before an arbitration panel.

the federal and state constitutions, as well as a possible statutory conflict between Lemon Law II and the Uniform Administrative Procedure Act. General Statutes § 4-166 et seq.

The propriety of a reservation which seeks an adjudication of constitutional questions in a factual vacuum is always doubtful. Only recently, this court reviewed at length the discretionary prudential concerns which generally counsel against such an undertaking. *State v. Zach,* 198 Conn. 168, 176–78, 502 A.2d 896 (1985), and cases there cited; see also J. Nowak, R. Rotunda & J. Young, Constitutional Law (2d Ed. 1983) pp. 72–74; L. Tribe, American Constitutional Law (1978) § 3-13. A party mounting a constitutional challenge to the validity of a statute must provide an adequate factual record in order to meet its burden of demonstrating the statute's adverse impact on some protected interest of its own, in its own particular case, and not merely under some hypothetical set of facts as yet unproven. Whether a case comes to us by way of reservation or after a final judgment, the rule is the same. We do not give advisory opinions, nor do we sit as roving commissions assigned to pass judgment on the validity of legislative enactments. "Determination of the scope and constitutionality of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function." *International Longshoremen's & Warehousemen's Union, Local 37* v. *Boyd,* 347 U.S. 222, 224, 74 S. Ct. 447, 98 L. Ed. 650 (1954). In the absence of weighty countervailing circumstances, facial invalidation of a statute is improvident. *Brockett* v. *Spokane Arcades, Inc.,* 472 U.S. 491, 501–502, 105 S. Ct. 2794, 86 L. Ed. 2d 394 (1985).

Without an adequate factual record, the issues concerning the constitutional validity of Lemon Law II are

not ripe for review. The problem we face is illustrated by the parties' conflicting positions about the first issue that has been reserved to us: does Lemon Law II violate the portion of article first, § 19, of the Connecticut constitution, as amended, which provides that "the right of trial by jury shall remain inviolate"?

The basic principles that govern the scope of article first, § 19, are well established. The right to a jury trial is measured by a historical test. "[A]s to cases triable to the jury prior to the constitution of 1818, and extant at the time of its adoption, the right may not be abolished." *Gentile* v. *Altermatt,* 169 Conn. 267, 298, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976); *United States Fidelity & Guaranty Co.* v. *Spring Brook Dairy, Inc.,* 135 Conn. 294, 297, 64 A.2d 39 (1949). Causes of action that are essentially cognizable at law are triable to a jury, while actions that are essentially equitable are not. *United States Trust Co.* v. *Bohart,* 197 Conn. 34, 44–45, 495 A.2d 1034 (1985); *Franchi* v. *Farmholme, Inc.* 191 Conn. 201, 209–11, 464 A.2d 35 (1983). This distinction is easier to state than to apply, especially when legal and equitable issues are combined in a single action. "Where incidental issues of fact are presented in an action essentially equitable, the court may determine them without a jury in the exercise of its equitable powers . . . . Where, however, the essential basis of the action is such that the issues presented would be properly cognizable in an action of law, either party has a right to have the legal issues tried to the jury, even though equitable relief is asked in order to give full effect to the legal rights claimed." *National Bank of Commerce of New London* v. *Howland,* 128 Conn. 307, 310, 22 A.2d 773 (1941). Application of these principles to a particular controversy requires an analysis of the pleadings as a whole. In that analysis, "[t]he form

of the relief demanded is not dispositive." *United States Trust Co.* v. *Bohart,* supra; *Franchi* v. *Farmholme, Inc.,* supra.

The cause of action whose essential nature we are asked to assess is the complaint of a consumer who invokes Lemon Law II to avail himself of an arbitral forum to hear his dispute with the manufacturer of a new motor vehicle. The plaintiffs maintain that such a consumer complaint is essentially a cause of action for breach of an express warranty. Whether a warranty claim is viewed as a contract action, a tort action, or a hybrid of the two; *Johnson* v. *Healy,* 176 Conn. 97, 100, 405 A.2d 54 (1978); such a matter has always been triable to a jury. *Bailey* v. *Nickols,* 2 Conn. (Root) 407 (1796). Because the issues that come before the statutory arbitration panels are substantially the same as those that would have been triable at law, the plaintiffs argue that, even as a statutory cause of action, a consumer complaint under Lemon Law II must respect the plaintiffs' right to a jury trial.

The defendants do not dispute the proposition that a common law action to recover damages for breach of an express warranty would have been a legal action triable to a jury prior to 1818. Rather, their argument is that Lemon Law II does not "track" this common law action. They maintain that the provisions of the Lemon Law follow, instead, the essential outlines of a bill in equity for specific performance of a contract or for rescission and restitution. Such equitable actions do not require a jury trial even if ancillary monetary damages are awarded. *United States Trust Co.* v. *Bohart,* supra.

In our analysis of the causes of action that Lemon Law II authorizes to be brought to arbitration panels, we are of course handicapped by having no stipulated facts about the contents of the pleadings that the panels

have entertained. In these circumstances, we are left with a facial appraisal of the applicable statutory provisions. The section of Lemon Law II that describes the remedies that arbitrators may order is § 42-181 (c). This section gives arbitration panels wide-ranging discretion to fashion "appropriate remedies, including, but not limited to one or more of the following: (1) Repair of the vehicle; (2) Replacement of the vehicle with an identical or comparable new vehicle acceptable to the consumer; (3) Refund of the full contract price, plus collateral charges as specified in subsection (d) of . . . section 42-179; (4) Reimbursement for expenses and compensation for incidental damages as specified in subsection (d) of . . . section 42-179; (5) Any other remedies available under the applicable warranties, section 42-179, this section and sections 42-182 to 42-184, inclusive, or the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act, 88 Stat. 2183 (1975), 15 USC 2301 et seq., as in effect on October 1, 1982." The refund and reimbursements authorized by § 42-179 (d) include: "The full contract price . . . all collateral charges, including . . . sales tax, license and registration fees . . . finance charges . . . and all incidental damages as defined in section § 42a-2-715, less a reasonable allowance for the consumer's use of the vehicle." Incidental damages, in turn, are defined in § 42a-2-715, which is part of the Uniform Commercial Code, as including "expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected . . . and any other reasonable expense incident to the delay or other breach," subject to diminution by a reasonable allowance for use value.

The expansive nature of this statutory authority for remedial action leaves considerable room for variation in actual practice. The briefs of the parties, and their oral arguments in this court, make it apparent that they

take distinctly different views of how arbitration panels operate in fact, and especially of the remedies that are likely to be sought and awarded. The plaintiffs focus on the monetary relief that is afforded by way of a "refund" and note that a claim for such relief closely resembles a monetary action for breach of warranty. The defendants, by contrast, emphasize the centrality of "repair" and "replacement" as specific enforcement of the terms of the plaintiffs' warranties. Starting from these different points of departure, the parties disagree strenuously about what is essential and what is ancillary to the claims that Lemon Law II authorizes arbitration panels to decide. Absent a factual record, this is a disagreement that we cannot resolve.

Because of the nature of the remedy that the act characterizes as a "refund," if indeed that remedy is regularly invoked by Lemon Law II arbitration panels, the plaintiffs' argument that the act impairs their right of access to trial by jury presents an extremely close question that cannot be dismissed out of hand. We note that the attorney general has himself emphasized that the availability of adequate compensatory damages is essential to a viable alternative dispute resolution mechanism. We note further that Lemon Law II invites a comparison to relevant provisions of the Uniform Commercial Code, when, in § 42-179 (d), it expressly incorporates the code's definition of incidental damages. Under article 2 of the code, a buyer's right to recover the purchase price of goods rightfully returned to the seller has never been characterized as an equitable remedy. The code speaks of specific performance only with regard to a buyer's entitlement to receive the goods that were promised. General Statutes §§ 42a-2-711 (2), 42a-2-716. For a buyer who rightfully rejects or revokes acceptance of a seller's tender of goods, the right to recovery of the purchase price is not a claim for rescission and may be tried to a jury. General Statutes

§ 42a-2-711 (2); *Conte* v. *Dwan Lincoln-Mercury, Inc.,* 172 Conn. 112, 119–20, 374 A.2d 144 (1976); and compare General Statutes § 42a-2-718 (2); *Barco Auto Leasing Corporation* v. *House,* 202 Conn. 106, 114–16, 520 A.2d 162 (1987).

Review of this serious challenge to the constitutional validity of Lemon Law II requires an adequate factual record. Without a finding of whether particular arbitration proceedings, or arbitration proceedings in general under Lemon Law II, essentially rely on requests and awards for refunds, we lack a basis for determining the extent to which the proceedings authorized by Lemon Law II are essentially legal or essentially equitable. Because it would be improvident to resolve this crucial issue on the present record, and because disposition of this issue may obviate the need to address the other questions that have been reserved to us, we conclude that it is inappropriate for us to respond to any part of the reservation. It no longer appears, as Practice Book § 4147 (formerly § 3133) requires, that the present determination of these questions "would be in the interest of simplicity, directness and economy of judicial action." See *State* v. *Zach,* supra, 178; *State* v. *Sanabria,* 192 Conn. 671, 684, 474 A.2d 760 (1984); *Rothkopf* v. *Danbury,* 156 Conn. 347, 350, 242 A.2d 771 (1968).

We do not answer the reserved questions; the case is remanded for further proceedings not inconsistent with this opinion.

No costs will be taxed to any party.

In this opinion the other justices concurred.