W. Scott Temple *v.* Geri Meyer
(13383)

Peters, C. J., Callahan, Glass, Covello and Hull, Js.

Argued June 9—decision released July 26, 1988

*Steven H. Levy,* with whom, on the brief, was *Stephanie M. Weaver,* for the appellant (plaintiff).

*Judith Dixon,* for the appellee (defendant).

GLASS, J. The plaintiff, W. Scott Temple, commenced this action against the defendant, Geri Meyer,[1] originally seeking custody of Timothy Daniel Temple, the defendant's minor child. The plaintiff subsequently amended his complaint to seek only visitation rights with the child. The trial court rendered judgment denying the plaintiff visitation rights. The plaintiff has appealed. We find no error.

The facts relevant to this appeal are as follows. The plaintiff and the defendant met in June, 1982, and began living together in September, 1982. They separated in March or April of 1984 and resumed living together in June, 1984. In July, 1984, the defendant learned that she was pregnant. Although she had some doubts as to whether the plaintiff was the child's father, the defendant told the plaintiff and he believed, that he was the child's father. The child, Timothy, was born on February 21, 1985. On Timothy's birth certificate the defendant listed the plaintiff as the father and Timothy was given the plaintiff's surname. While the plaintiff and the defendant were living together, the plaintiff was Timothy's primary caretaker. The plaintiff and the defendant separated in May, 1986.

In October, 1986, the defendant started living with Scott Barton. The plaintiff continued to visit Timothy until November, 1986. Still believing that he was the father, the plaintiff brought this action in December, 1986, seeking custody of Timothy and pendente lite visitation. The trial court granted pendente lite visitation on February 23, 1987, to commence on Sunday, March 1, 1987, and alternate Sundays thereafter from 9 a.m. to 6 p.m.

The defendant married Scott Barton on May 1, 1987. In June, 1987, a blood test revealed that the plaintiff

---

[1] Subsequent to the commencement of this action the defendant Geri Meyer married Scott Barton. Geri Meyer is now Geri Barton.

was not Timothy's biological father. Thereafter, on August 17, 1987, the plaintiff filed an amended complaint, seeking only visitation.

At the hearing on visitation, the trial court heard testimony from Edward D. Kenny, the family relations officer, who had prepared a visitation report that was submitted to the court, and considered by the court in its memorandum of decision. Kenny recommended that the plaintiff's motion for visitation be denied. He noted that the plaintiff was "closely bonded" to Timothy but that Scott Barton "has taken over the role of psychological father to Timothy" and has achieved "a relational status to Timothy never achieved by [the plaintiff], that of step-father." Kenny also stated that "[f]or two competing father figures to become a permanent reality in the child's life would appear to be well beyond the level of the child's comprehension at this time."

At the hearing, the plaintiff testified about the caring and loving relationship that existed between him and Timothy. He testified that he often referred to Timothy as "Daddy's boy" and that Timothy referred to him as "Daddy." The plaintiff also presented the testimony of a babysitter regarding the strong psychological bonding between the plaintiff and Timothy.

The trial court also heard the testimony of the defendant that she believed that the court-imposed visitation rights were upsetting Timothy. She stated that the visitations had caused him to wet his bed and soil his clothes. Additionally, the defendant presented the testimony of another babysitter who occasionally picked up Timothy from a daycare center. She testified that after the plaintiff obtained visitation rights, Timothy was very quiet and that he had soiled his clothes when she picked him up.

In rebuttal, the plaintiff presented the testimony of a friend regarding her opportunity to observe the plain-

tiff visit with the child. She testified that the relationship between the plaintiff and Timothy "was very close," and for much of the visitation time the plaintiff and Timothy played games and at no time did Timothy appear sullen or withdrawn.

The trial court concluded that it would be in the child's best interest if he was not compelled to continue a relationship with the plaintiff. From the ensuing judgment the plaintiff appealed to the Appellate Court, claiming that, based on the evidence presented at the hearing, the trial court erred in denying visitation. The appeal was transferred to this court pursuant to Practice Book § 4023. We find no error.

The sole issue in this appeal is whether the trial court erred in denying the plaintiff visitation with the child. Because this is a factual issue, the plaintiff argues that the statement of facts is an important part of this appeal. We agree that the facts distilled from the evidence are important. In contrast to the trial court, however, our role is not that of factfinder. "Our function is to decide whether the decision of the trial court was 'clearly erroneous in view of the evidence and pleadings in the whole record'; Practice Book § [4061]; *Stelco Industries, Inc.* v. *Cohen,* 182 Conn. 561, 564, 438 A.2d 759 (1980); and 'where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence . . . .' *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980). See *Hollingsworth* v. *Hollingsworth,* 180 Conn. 212, 214–15, 429 A.2d 463 (1980). . . . Weighing the evidence and judging the credibility of the witnesses is the function of the trier of fact and this court will not usurp that role. *Munn* v. *Scalera,* 181 Conn. 527, 530–31, 436 A.2d 18 (1980); *Johnson* v. *Flammia,* 169 Conn. 491, 497, 363 A.2d 1048 (1975)." *Gallo* v. *Gallo,* 184 Conn. 36, 38–39, 440 A.2d 782 (1981). Finally, we

note that as in any civil action of this nature, it is the plaintiff's burden of proof to show that visitation is in the child's best interest. See *Ubysz* v. *DiPietro,* 185 Conn. 47, 57, 440 A.2d 830 (1981).

This action is based on General Statutes § 46b-59[2] which authorizes the trial court to "grant the right of visitation . . . to any minor child . . . to any person, upon an application . . . . In making, modifying or terminating such an order, the court shall be guided by the best interest of the child . . . . " The trial court found that it would not be in the child's best interest to grant visitation rights to the plaintiff. The court reasoned that "the child is now of such a young age that it would be at best confusing for him to be exposed to an individual passing as his father, who in fact is not."

The plaintiff challenges Kenny's statement, adopted by the trial court, that Scott Barton has taken over the role of psychological father to Timothy.[3] Although the

[2] "[General Statutes] Sec. 46b-59. COURT MAY GRANT RIGHT OF VISITATION TO ANY PERSON. The superior court may grant the right of visitation with respect to any minor child or children to any person, upon an application of such person. Such order shall be according to the court's best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable, provided the grant of such visitation rights shall not be contingent upon any order of financial support by the court. In making, modifying or terminating such an order, the court shall be guided by the best interest of the child, giving consideration to the wishes of such child if he is of sufficient age and capable of forming an intelligent opinion. Visitation rights granted in accordance with this section shall not be deemed to have created parental rights in the person or persons to whom such visitation rights are granted. The grant of such visitation rights shall not prevent any court of competent jurisdiction from thereafter acting upon the custody of such child, the parental rights with respect to such child or the adoption of such child and any such court may include in its decree an order terminating such visitation rights."

[3] "A psychological parent is one who, on a continuing, day-to-day basis, through interaction, companionship, interplay, and mutuality, fulfills the child's psychological needs for a parent, as well as the child's physical needs. The psychological parent may be a biological . . . adoptive, foster, or

plaintiff claims that the relationship between Scott Barton and Timothy is irrelevant to this action, he nonetheless argues that because Kenny did not interview Barton, there was no basis for his conclusion that Barton was Timothy's psychological father. The plaintiff acknowledges that Kenny interviewed him and the defendant in preparing his report. Moreover, the trial court had the benefit of not only the report of Kenny, but also the testimony of Kenny, the plaintiff, the defendant, two babysitters and a friend of the plaintiff.

The unchallenged evidence before the court indicates that the plaintiff is not and does not claim to be Timothy's biological father, adoptive father or stepfather. Further, after the plaintiff and the defendant separated in May, 1986, the defendant and Timothy began living with Scott Barton in October, 1986. Barton and the defendant were married in May, 1987. Moreover, on the basis of his interview with the defendant, Kenny concluded that Timothy has become closely bonded to Barton, and that the defendant, Barton and Timothy have merged into a close family unit and are looking toward Barton's adoption of the child.[4] Kenny's report also stated that the defendant believes that the plaintiff should be denied a continuing relationship with Timothy, as it will only become more confusing to the child as he develops through his formative years, and that she believes that it is not in her son's best interest to continue to have a relationship with the plaintiff.

We recognize that third party visitation statutes are relatively new and have been the subject of little judi-

common-law . . . parent, or any other person. There is no presumption in favor of any of these after the initial assignment at birth . . . . " J. Goldstein, A. Freud & A. Solnit, Beyond the Best Interests of the Child (1979) p. 98.

[4] At oral argument, counsel for the defendant stated that Scott Barton had adopted Timothy. The plaintiff did not challenge this statement.

cial construction. Our statute leaves great latitude for the exercise of judicial discretion because it does not focus on the legal relationship of the parties involved. Although other jurisdictions have granted visitation to parties who share a blood or legal relationship with the child; see *Bryan* v. *Bryan,* 132 Ariz. 353, 359, 645 P.2d 1267 (1982) (stepparent and child); *Looper* v. *McManus,* 581 P.2d 487, 489 (Okla. App. 1978) (grandparents, former stepmother and child); *Spells* v. *Spells,* 250 Pa. Super. 168, 175, 378 A.2d 879 (1977) (stepfather and children); our statute is not so limited. The only criterion under § 46b-59 is the best interest of the child.

We are persuaded that the trial court was not clearly erroneous in its conclusion that visitation to the plaintiff was not in the best interest of the child. There was evidence that Barton became a psychological parent to Timothy, considering Kenny's report and his testimony, the testimony of the babysitter presented by the defendant, and the defendant's testimony, including her statement that the child referred to Barton as "Papa." Even if the plaintiff had demonstrated that he had been Timothy's psychological parent, such a finding would not have demonstrated that visitation continued to be in the best interest of the child. See *Seymour* v. *Seymour,* 180 Conn. 705, 711–12, 433 A.2d 1005 (1980). The trial court had the advantage of hearing the witnesses and observing their demeanor and attitude. In making its determination under General Statutes § 46b-59, the trial court is required to "be guided by the best interest of the child." After considering all of the evidence and the reasonable inferences therefrom, we are not persuaded that the trial court was clearly erroneous in its determination that it was in the best interest of Timothy that he not be compelled to continue a relationship with the plaintiff.

There is no error.

In this opinion the other justices concurred.