ROSALIND LEHRER ET AL. *v.* PHILLIP DAVIS ET AL.
(13752)

PETERS, C. J., HEALEY, SHEA, GLASS and HULL, Js.

Argued January 3—decision released March 20, 1990

*William H. Narwold,* with whom was *Karen L. Goldthwaite,* for the appellants (defendants).

*Bruce A. Chamberlain,* for the appellees (plaintiffs).

PETERS, C. J. This appeal comes to us, by way of reservation, as a challenge to the constitutionality of our visitation statute, General Statutes § 46b-59.[1] The

---

[1] General Statutes § 46b-59 provides: "COURT MAY GRANT RIGHT OF VISITATION TO ANY PERSON. The superior court may grant the right of visitation with respect to any minor child or children to any person, upon an application of such person. Such order shall be according to the court's best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable, provided the grant of such visitation rights shall not be contingent upon any order of financial support by the court. In making, modifying or terminating such an order, the court shall be guided

plaintiffs, Rosalind and Irving Lehrer, brought this action seeking a court order to permit them to visit Rosalind Lehrer's grandchildren, who are the minor children of the defendants, Phillip and Penny Davis. The defendants moved to strike the plaintiffs' cause of action on two related grounds, that the common law afforded them no authority for such relief and that the visitation statute was unconstitutional. At the request of all the parties, the trial court granted a motion for reservation upon stipulated facts to have this court resolve the question of the constitutional validity of § 46b-59.[2] Because we conclude that the question was improvidently reserved, we remand the case for trial.

Although the question reserved for our advice asks us to determine the constitutionality of § 46b-59 as applied to the facts of this case, the facts to which the parties have stipulated are extremely sparse. As background information, the stipulation acknowledges that the plaintiff Rosalind Lehrer is the natural paternal grandmother of the defendants' children, and that the plaintiff Irving Lehrer is their step-paternal grandfather. The stipulation notes the status of the children as minors, their respective dates of birth being March 16, 1977, and April 23, 1981. The stipulation also

by the best interest of the child, giving consideration to the wishes of such child if he is of sufficient age and capable of forming an intelligent opinion. Visitation rights granted in accordance with this section shall not be deemed to have created parental rights in the person or persons to whom such visitation rights are granted. The grant of such visitation rights shall not prevent any court of competent jurisdiction from thereafter acting upon the custody of such child, the parental rights with respect to such child or the adoption of such child and any such court may include in its decree an order terminating such visitation rights."

[2] The parties reserved the following question of law for the advice of this court: "Is Conn. Gen. Stat. § 46b-59 in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution and article first, § 8 of the Connecticut Constitution, as applied to the facts of this case, in that the statute impermissibly infringes on the defendants' fundamental constitutional right to rear their children as they choose?"

lists the domicile of each of the parties. Only two paragraphs of the stipulation, however, touch on the merits of the issue of visitation: "[t]he defendants and their children are an intact family, living together; no separation or dissolution of the marriage is contemplated"; Paragraph 8; and "[t]he defendants' children have never lived with the plaintiffs and have had virtually no face-to-face or telephone contact with the plaintiffs for over one year." Paragraph 9.

This stipulation is noteworthy for what it does not reveal. Without intending to be exhaustive, we observe the absence of any stipulated facts about: the extent of the earlier relationship between the plaintiffs and the children; the reasons for the defendants' termination of face-to-face or telephone contact between the plaintiffs and the children; the presence or absence of reason to believe that one or both of the plaintiffs may abuse the children or act in some other way inconsistent with their best interest; the presence or absence of reason to believe that one or both of the defendants may be abusing the children or may be acting in some other way inconsistent with their best interest; or the opinions of the children themselves with respect to the proposed visitation. For all practical purposes, this stipulation is a request for advice about the facial validity of our visitation statute.

Several recent cases in this court counsel against the adjudication of constitutional questions in a factual vacuum. *Motor Vehicle Manufacturers Assn. of the United States, Inc.* v. *O'Neill,* 203 Conn. 63, 75, 523 A.2d 486 (1987); *State* v. *Zach,* 198 Conn. 168, 176–78, 502 A.2d 896 (1985). "A party mounting a constitutional challenge to the validity of a statute must provide an adequate factual record in order to meet its burden of demonstrating the statute's adverse impact on some protected interest of its own, in its own particular case, and not merely under some hypothetical

set of facts as yet unproven. Whether a case comes to us by way of reservation or after a final judgment, the rule is the same. We do not give advisory opinions, nor do we sit as roving commissions assigned to pass judgment on the validity of legislative enactments. 'Determination of the scope and constitutionality of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function.' *International Longshoremen's & Warehousemen's Union, Local 37* v. *Boyd,* 347 U.S. 222, 224, 74 S. Ct. 447, 98 L. Ed. 650 (1954). In the absence of weighty countervailing circumstances, facial invalidation of a statute is improvident. *Brockett* v. *Spokane Arcades, Inc.,* 472 U.S. 491, 501–502, 105 S. Ct. 2794, 86 L. Ed. 2d 394 (1985)." *Motor Vehicle Manufacturers Assn. of the United States, Inc.* v. *O'Neill,* supra.

Without an adequate factual record, we are confronted with severe obstacles in undertaking a constitutional review of § 46b-59. The problem we face is illustrated by the parties' disparate view of the underlying events that precipitated this litigation. The defendants, who are the moving parties on the constitutional claim, take issue with the plaintiffs' factual assertions in their brief to this court about their prior relationship with the children and their communication difficulties with the defendants. The defendants maintain, in their reply brief, that we should disregard the plaintiffs' assertions because their accuracy is disputed and because they are irrelevant, since "these 'facts' are not part of the record . . . . " The defendants apparently would have us rely on the record despite its failure to resolve a factual controversy that obviously bears on the determination of the best interest of the children, the only statutory criterion for the exercise of judicial discretion provided by § 46b-59. *Temple* v. *Meyer,* 208 Conn. 404, 410, 544 A.2d 629 (1988). If we

were to subscribe to such an approach, we would be turning the well established principles that govern due process jurisprudence on their head. Until the defendants establish a factual basis for the alleged violation of their constitutional rights, they have not established the predicate conditions for the adjudication of their constitutional claim. *Motor Vehicle Manufacturers Assn. of the United States, Inc.* v. *O'Neill,* supra; *Weil* v. *Miller,* 185 Conn. 495, 501–502, 441 A.2d 142 (1981); *Hardware Mutual Casualty Co.* v. *Premo,* 153 Conn. 465, 471, 217 A.2d 698 (1966).

The fact-bound nature of the defendants' constitutional challenge to § 46b-59 permeates every aspect of their due process claim. Neither their general parental rights to raise their children without unwarranted state interference nor their stipulated status as an intact family provides a basis for us to consider their constitutional claims, on the present record, as a matter of law.

"It is, of course, true that 'freedom of personal choice in matters of . . . family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment.' *Cleveland Board of Education* v. *LaFleur,* [414 U.S. 632, 639–40, 94 S. Ct. 791, 39 L. Ed. 2d 52 (1974)]." *Smith* v. *O.F.F.E.R.,* 431 U.S. 816, 842, 97 S. Ct. 2094, 53 L. Ed. 2d 14 (1977); *Nye* v. *Marcus,* 198 Conn. 138, 144, 502 A.2d 869 (1985). Our law "recognizes that parents have significant constitutionally protected rights to the companionship, care, custody and management of their children. See *Quilloin* v. *Walcott,* 434 U.S. 246, 255, 98 S. Ct. 549, 54 L. Ed. 2d 511, reh. denied, 435 U.S. 918, 98 S. Ct. 1477, 55 L. Ed. 2d 511 (1978); *Stanley* v. *Illinois,* 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972); *McGaffin* v. *Roberts,* 193 Conn. 393, 400–401, 479 A.2d 176 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1747, 84 L. Ed. 2d 813 (1985)." *Cappetta* v. *Cappetta,* 196

Conn. 10, 14, 490 A.2d 996 (1985); see also *Wisconsin v. Yoder*, 406 U.S. 205, 232–33, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972); *Ginsberg* v. *New York*, 390 U.S. 629, 639, 88 S. Ct. 1274, 20 L. Ed. 2d 195, reh. denied, 391 U.S. 971, 88 S. Ct. 2029, 20 L. Ed. 2d 887 (1968); *Pierce v. Society of Sisters*, 268 U.S. 510, 534–35, 45 S. Ct. 571, 69 L. Ed. 1070 (1925); *Meyer* v. *Nebraska*, 262 U.S. 390, 399, 43 S. Ct. 625, 67 L. Ed. 1042 (1923). "This right to family integrity includes 'the most essential and basic aspect of familial privacy—the right of the family to remain together without the coercive interference of the awesome power of the state.' *Duchesne v. Sugarman*, [566 F.2d 817, 825 (2d Cir. 1977)]." *In re Juvenile Appeal (83-CD)*, 189 Conn. 276, 284, 455 A.2d 1313 (1983).

The family is not, however, beyond regulation in the public interest, and the rights of parenthood are not beyond limitation. *Prince* v. *Massachusetts*, 321 U.S. 158, 166, 64 S. Ct. 438, 88 L. Ed. 645 (1944); *McGaffin v. Roberts*, supra, 401. The state's countervailing interest in the welfare of a child justifies appropriately bounded state intervention; *In re Juvenile Appeal (83-CD)*, supra, 285; *State* v. *Anonymous*, 179 Conn. 155, 165, 425 A.2d 939 (1979); *In re Juvenile Appeal (Anonymous)*, 177 Conn. 648, 661–62, 420 A.2d 875 (1979);[3] as long as the state acts in accordance with the requirements of procedural due process.[4] What process

[3] Indeed, state intervention to order third party visitation under General Statutes § 46b-59 is entirely premised on the "best interest of the child" standard.

[4] The placement of the burden of proof on the party seeking visitation; *Temple* v. *Meyer*, 208 Conn. 404, 408, 544 A.2d 629 (1988); and the court's judicial discretion to review the facts may provide the parents on remand with at least some of the constitutional safeguards to which they are entitled. *In re Juvenile Appeal (83-CD)*, 189 Conn. 276, 297, 455 A.2d 1313 (1983). On remand, the trial court may wish to consider other procedural devices designed to minimize premature intrusions into the family, such as a show cause hearing with the burden of proof on the plaintiffs, the appointment of an attorney for the children, and pretrial conciliation sessions with the Family Support Services.

is due depends upon the intrusiveness of the competing state concern. *Santosky* v. *Kramer,* 455 U.S. 745, 758, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *Lavertue* v. *Niman,* 196 Conn. 403, 408, 493 A.2d 213 (1985); *In re Juvenile Appeal (83-CD),* supra, 297; see also *Mathews* v. *Eldridge,* 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). Significantly, even when the contemplated state intrusion is most severe, as in an action for termination of parental rights, the state is required only to provide an appropriately demanding standard of proof so as to guarantee "fundamentally fair *procedures.*" (Emphasis added.) *Santosky* v. *Kramer,* supra, 754. Lesser intrusions, such as custody orders, represent a "difference in kind and not in degree"; *McGaffin* v. *Roberts,* supra, 406; from termination proceedings, and thus permit intervention on a lesser standard of proof. The constitutional requirement of procedural due process thus invokes a balancing process that cannot take place in a factual vacuum. *Lassiter* v. *Department of Social Services,* 452 U.S. 18, 25, 101 S. Ct. 2153, 68 L. Ed. 2d 640, reh. denied, 453 U.S. 927, 102 S. Ct. 889, 69 L. Ed. 2d 1023 (1981); *Morrisey* v. *Brewer,* 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972); *Cafeteria Workers* v. *McElroy,* 367 U.S. 886, 895, 81 S. Ct. 1743, 6 L. Ed. 2d 1230 (1961); *McGaffin* v. *Roberts,* supra, 412.

The defendants' status as an intact family, while arguably heightening their claim to procedural due process; *Van Cleve* v. *Hemminger,* 141 Wis. 2d 543, 549, 415 N.W.2d 571 (1987); cannot fill this factual vacuum. The fact that a family is intact does not guarantee the absence of child abuse. Even absent child abuse, there is no compelling constitutional requirement that the legislature must defer, in every instance, to the child-rearing preferences of the nuclear family. "To assert that, as a matter of law, a widowed, divorced, remarried, or unmarried parent is subject to greater [s]tate

interference than a married parent would be to assert that the former is less fit than the latter to raise his or her own child." *In the Matter of Frances E.* v. *Peter E.*, 125 Misc. 2d 164, 167, 479 N.Y.S.2d 319 (Fam. Ct. 1984). Finally, the legislature may choose to recognize a public interest in affording a child access to those outside the nuclear family who manifest a deep concern for his or her growth and development. "Ours is by no means a tradition limited to respect for the bonds uniting the members of the nuclear family." *Moore* v. *East Cleveland,* 431 U.S. 494, 504, 97 S. Ct. 1932, 52 L. Ed. 2d 531 (1977); and see *Michaud* v. *Wawruck,* 209 Conn. 407, 415, 551 A.2d 738 (1988); *In re Theresa S.,* 196 Conn. 18, 31, 491 A.2d 355 (1985).[5]

The legislative determination to allow grandparents, and others with a special interest in a child's well-being, the opportunity to demonstrate that they may significantly contribute to the best interest of the child finds constitutional support, furthermore, in the recognition that "[t]he constitutional concerns are not entirely parental because the preservation of family integrity 'encompasses the reciprocal rights of both parent[s] and children.' *Duchesne* v. *Sugarman,* [supra, 825.]" *McGaffin* v. *Roberts,* supra, 407; *Smith* v. *Fontana,* 818 F.2d 1411, 1418 (9th Cir. 1987); *Lavertue* v. *Niman,* supra, 409. "[T]he children themselves have constitutionally protectible interests." *Wisconsin* v. *Yoder,* supra, 243 (Douglas, J., dissenting in part); see *In re Manuel R.,* 207 Conn. 725, 739, 543 A.2d 719 (1988). "The importance to children of stability and continuity in their close relationships is well recognized. 'Psychiatrists and psychologists . . . unanimously coun-

[5] "In today's society, there are increasingly large numbers of single parent homes with varying degrees of success. It is better to have a single parent home based upon love, care and attention than to have the two parent home that existed in these circumstances." *In re Theresa S.,* 196 Conn. 18, 31, 491 A.2d 355 (1985).

sel that children should maintain and retain meaningful relationships and that to deny them continuing contacts is a deprivation. . . . Stability, continuity, and opportunity, of and for meaningful associations are said to build a healthy psyche.' Foster and Freed, *The Child's Right to Visit Grandparents*, TRIAL, March 1984, at 38 . . . ." *Roberts* v. *Ward,* 126 N.H. 388, 392–93, 493 A.2d 478 (1985); see *Mimkon* v. *Ford,* 66 N.J. 426, 332 A.2d 199 (1975).

As with the defendants' general claim, reciprocal rights to due process call for a flexible and fact-specific balancing of interests that cannot be accomplished without an inquiry into the particular circumstances of the case. We conclude, therefore, that the custodial rights of an intact family do not automatically preclude the visitation rights of grandparents, and, accordingly, that the constitutional validity of § 46b-59 is not ripe for adjudication on the present record.

We do not answer the reserved question; the case is remanded for further proceedings not inconsistent with this opinion.

In this opinion HEALEY, GLASS and HULL, Js., concurred.

SHEA, J., concurring. I agree that the reserved question of the constitutionality of General Statutes § 46b-59 "as applied to the facts of this case" cannot be answered at this time because the facts contained in the record are inadequate. The majority, however, after reaching this conclusion, embarks upon a discussion by way of obiter dicta concerning constitutional issues that have not been reserved, without any explanation of the need to address those issues.

Apparently the purpose of this gratuitous dissertation is to express the view of the majority that the application of § 46b-59 to the defendants is not constitu-

tionally precluded simply because they constitute an intact "nuclear" family. The significance of the defendants' status as a traditional family unit in the determination of the constitutionality of a visitation order under the statute as well as in the decision of whether the best interests of children, when there is no claim of abuse or mistreatment as in the present case, may warrant interference with parental control over minor children is a matter best left to another day when we have all the facts before us.

"The best teaching of this Court's experience admonishes us not to entertain constitutional questions in advance of the strictest necessity." *Parker* v. *Los Angeles,* 338 U.S. 327, 333, 70 S. Ct. 161, 94 L. Ed. 144 (1949); see *State* v. *Madera,* 198 Conn. 92, 105, 503 A.2d 136 (1985). The majority disregards this principle of constitutional adjudication as well as the restriction upon our authority to render advisory opinions contained in Practice Book § 4147: "The court will not entertain a reservation for its advice upon questions of law arising in any action unless the question or questions presented are such as are, in the opinion of the court, reasonably certain to enter into the decision of the case, and it appears that their present determination would be in the interest of simplicity, directness and economy of judicial action." Since the issues discussed by the majority have not been included in the reservation and the case is being remanded for a further presentation of the relevant facts, it is difficult to perceive how judicial economy will be enhanced by considering those issues at this time.

Accordingly, I concur only in the result.