**Stanley WILLIAMS, Plaintiff,**

**v.**

**BAYER CORPORATION, Defendant.**

**No. CIV. 3:95–02519(DJS).**

United States District Court,
D. Connecticut.

Oct. 27, 1997.

John R. Williams, Williams, Polan & Pattis, New Haven, CT, for Plaintiff.

Ronald Edward Naves, Jr., James L. Fischer, LeBoeuf, Lamb, Greene & MacRae, Hartford, CT, for Defendant.

## *MEMORANDUM OPINION AND ORDER*

SQUATRITO, District Judge.

Pending before this court are the defendant's motions for summary judgment and for attorney's fees and costs. In the complaint, the plaintiff, a former employee of the defendant, claims that the defendant terminated him for exercising constitutionally-pro-

tected free speech rights, in violation of Conn. Gen.Stat. § 31–51q. For the reasons that follow, the defendant's motion for summary judgment is granted, and the defendant's motion for attorney's fees is denied.

## I. BACKGROUND

### A. The Plaintiff's Employment

Based on the affidavits, depositions, exhibits, and other documents on file, this court finds the following. In February 1991, the defendant hired the plaintiff, an African–American, to work at its Institute of Bone and Joint Disorders and Cancer in West Haven, Connecticut.

In February 1993, the plaintiff filed an internal complaint against his supervisor, Dr. James Barbosa, alleging that Barbosa acted in a racially discriminatory manner toward him. According to the plaintiff, Barbosa had shoved him and spoken disparagingly about his race. In April, in response to the plaintiff's complaint, the defendant offered to transfer the plaintiff to another supervisor, Dr. Haren Vasavada. On June 2, the plaintiff accepted the transfer. However, the defendant never physically moved the plaintiff from his work station; he remained in the same laboratory as Barbosa. Subsequently, on December 27, the plaintiff submitted a written complaint to the defendant's Equal Employment Opportunity Commission officer, alleging that he was the victim of racial discrimination.

Beginning in 1993, and continuing through 1994, the plaintiff began having problems with a co-worker, Thomas Seng. The plaintiff had accused Seng of leaving dangerous chemicals out and uncapped in the laboratory, and alleges that this was done to harm him because of his race. The plaintiff complained to his supervisors several times about Seng's actions. The conflict came to a head on March 6, 1995, when the plaintiff and another employee, Ji Yi Fu, were having a discussion. Seng overheard the conversation and told the plaintiff, "stop talking to him like that." The plaintiff then engaged in what he described in his deposition as a "heated exchange" with Seng:

I asked him specifically, "What are you going to do to me?" That was my question. I kept repeating that. "What are you going to do to me. What are you going to do to me?" We got very close. I never touched him. And Mr. Fu intervened. He got between us.

And my last comment to Mr. Seng was, I told him that—I asked him what was he going to do, poison me. And before, before he left, I may have said something like I'll kick your ass all over the place. We can meet outside of the grounds, outside off the grounds. I'm willing to meet him, to challenge him, but I was fed up with the harassment. I was fed up with it.

On March 7, Seng filed a complaint concerning this incident with the unit supervisor, Dr. David Osterman.

On March 3, 1995 (before the above altercation), the plaintiff sent an e-mail to Angela Capossela, another co-worker, in response to her innocuous e-mail requesting volunteers for "Bring Your Child to Work Day." The plaintiff's response read, in part:

What is the purpose of this communication?

What are your motives? Do you feel EMPOWERED! Are you a TEAM PLAYER!

Do you feel exonerated?

Do you believe a memo from you to me, extending an invitation for me to work with you (again) is legitimate, as in E=MC 2? Is this an example of business leadership? Do you consider yourself a leader worthy of my time and effort after your campaign to smear and insult?

The e-mail ended with the instruction that Capossela should maintain her "distance." That day, Capossela complained to Dr. Vasavada about the e-mail. Upon learning of the altercation between Seng and the plaintiff, she again complained to Dr. Vasavada, stating that she did not want to work alone in the laboratory at night for fear of the plaintiff. She was so distraught over the e-mail that she took time off from work.

After these complaints, Drs. Vasavada, Osterman, and other managers investigated the plaintiff's conduct. Based on the investigation, they determined the plaintiff's behav-

ior was "unprofessional and unacceptable," and constituted grounds for termination.

On March 24, 1995, the defendant informed the plaintiff that he would be terminated. However, the defendant offered the plaintiff a separation agreement which would pay the plaintiff $12,621 in exchange for his resignation effective April 3, 1995. The proposed agreement read in pertinent part:

Section 3. *Release and Covenant Not to Sue*

In exchange for the compensation described in this Agreement and other good and valuable consideration, receipt of which is hereby acknowledged, Mr. Williams for himself, his agents, estate, dependents, beneficiaries and assigns release and forever discharge (sic) the Company and/or its affiliates, successors, assigns, directors, shareholders, officers, employees, trustees and/or agents, both individually and in their official capacities with the Company, from any and all actions or causes of action, suits, claims, complaints, contracts, liabilities, agreements, promises, debts or damages, hereafter existing or contingent, known or unknown, which arise out of your employment or the termination of your employment with the Company or under any employee benefit plan (except vested benefits under any employee benefit plan) sponsored by the Company except for claims which relate to your enforcement of the Company's payments and other obligations under this Agreement. . . .

\* \* \* \* \* \*

Section 7. *Representations and Warranties*

j) You agree that: you will not make any statement now, or at any time in the future, to representatives of any media or to any other person which is disparaging of the business, reputation, competence or character of the Company. . . .

The plaintiff refused to sign the separation agreement. He states that he disagreed with the provision giving up his right to file a discrimination complaint and speak disparagingly of the defendant. On April 3, 1995, the defendant notified the plaintiff that he was being terminated for cause, effective that day. The plaintiff conceded at his deposition that he was terminated because the defendant viewed him as the instigator of the altercation.

### B. *Procedural History*

On April 13, 1995, the plaintiff filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CCHRO") alleging that the defendant terminated him because of his race and color. On July 12, 1995, the CCHRO informed the plaintiff that it found no evidence that his termination was racially motivated. It also found that "[t]here is no reasonable possibility that further investigation [will] result in a finding of reasonable cause. . . ."

On October 23, 1995, the plaintiff brought this action in Connecticut Superior Court. It is a one-count complaint alleging a violation of Conn. Gen.Stat. § 31–51q. The plaintiff makes no reference to any other state or federal civil rights laws. On November 22, 1995, the defendant removed to federal court based on diversity jurisdiction.

### II. *STANDARD OF REVIEW*

A motion for summary judgment will be granted if the court determines that the case presents no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The substantive law governing the case identifies those facts which are material on motions for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258, 106 S.Ct. 2505, 2515, 91 L.Ed.2d 202 (1986). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

To determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party

against whom summary judgment is sought. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513; *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987). The inferences drawn from the evidence submitted in support of the motion must be viewed in the light most favorable to the party opposing it. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) *(per curiam );* *Ramseur,* 865 F.2d at 465.

On a motion for summary judgment, a court cannot try issues of fact; it can only determine whether there are issues to be tried. *Donahue,* 834 F.2d at 58. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. With these rules and principles of law in mind, the court will determine whether summary judgment is appropriate.

## III. *DISCUSSION*

### A. *Free Speech Claim*

The plaintiff's claim rests on Conn. Gen. Stat. § 31–51q, which prohibits an employer from terminating an employee for, *inter alia,* exercising his free speech rights. The statute reads in pertinent part:

> Any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or working relationship between the employee and the employer, shall be liable to such employee for damages; and for reasonable attorney's fees as part of the costs of any such action for damages. If the court determines that such action for damages was brought without substantial justification, the court may award costs and reasonable attorney's fees to the employer.

Conn. Gen.Stat. § 31–51q.[1]

Connecticut trial courts have held that a party bringing a claim under § 31–51q must show: (1) that he was exercising rights protected by the First Amendment to the United States Constitution or by an equivalent provision of the Connecticut Constitution; (2) that he was fired "on account of" his exercise of First Amendment or equivalent state constitutional rights; and (3) that his exercise of First Amendment or equivalent state constitutional rights did not substantially or materially interfere with his bona fide job performance or with his working relationship with his employer. *D'Angelo v. McGoldrick,* 1995 WL 476843, 1995 Conn.Super. LEXIS 2305, *2–3 (collecting cases). The Connecticut Supreme Court has declined to rule on whether that standard or the standard the Court has applied in retaliatory discharge complaints brought under 42 U.S.C. § 1983 applies in § 31–51q cases. *D'Angelo v. McGoldrick,* 239 Conn. 356, 363, 685 A.2d 319 (1996). In § 1983 retaliatory discharge cases brought in state court, the Supreme Court has applied the burden-shifting approach used by federal courts. *Schnabel v. Tyler,* 230 Conn. 735, 749–750, 646 A.2d 152 (1994) (citing *Bieluch v. Sullivan,* 999 F.2d 666, 670 (2d Cir.1993), *cert. denied,* 510 U.S. 1094, 114 S.Ct. 926, 127

---

**1.** The First Amendment to the United States Constitution states:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

Article first, § 3 of the Connecticut Constitution states:

The exercise and enjoyment of religious profession and worship, without discrimination, shall forever be free to all persons in the state; provided, that the right hereby declared and established, shall not be so construed as to excuse acts of licentiousness, or to justify practices inconsistent with the peace and safety of the state.

Article first, § 4 states:

Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty.

Article first, § 14 states:

The citizens have a right, in a peaceable manner, to assemble for their common good, and to apply to those invested with the powers of government, for redress of grievances, or other purposes, by petition, address or remonstrance.

L.Ed.2d 219 (1994); and *Frank v. Relin,* 1 F.3d 1317, 1328–29 (2d Cir.), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993)).[2] However, the Court emphasized that, under either approach, a plaintiff must show that the employment decision was made "on account of" the alleged protected activity. *D'Angelo,* 239 Conn. at 363, 685 A.2d 319. This, in turn, requires a showing that the speech was "at least a substantial or motivating factor" in the decision. *Id.* (citing *Schnabel,* 230 Conn. at 750, 646 A.2d 152).[3]

This court need not determine which of the two standards the Connecticut Supreme Court would apply in a § 31–51q claim because the plaintiff has failed to show he was discharged "on account of" the exercise of his free speech rights. Accordingly, his claim fails under either test.

■ Interpreting the complaint and other documents as broadly as possible in favor of the plaintiff, the plaintiff appears to claim that the defendant terminated him on account of: (1) his complaints concerning Seng's work habits; (2) his claims of racial discrimination by the defendant; and (3) his refusal to sign the separation agreement which would have precluded him from filing suit or speaking against the defendant.[4]

■ A review of the undisputed facts shows that the plaintiff's complaints about Seng's work habits and racial discrimination in the workplace were not substantial or motivating factors in his termination.[5] The plaintiff's internal complaint concerning dis-

crimination was made in late 1993, and his complaints about Seng were made in 1994. Hence, there is little, if any, nexus between that speech and the plaintiff's termination in 1995. *See Stever v. Ind. Sch. Dist.,* 943 F.2d 845, 854 (8th Cir.1991). To the extent the plaintiff presents evidence tending to show that the defendant terminated him for his complaints before the altercation with Seng, any inference of discrimination in violation of § 31–51q is more than counteracted by the plaintiff's admission at his deposition that the defendant terminated him because of the altercation.

It is undisputed that after the plaintiff's attempt to provoke Seng into a fight and his threatening e-mail to Capossela, the defendant reasonably concluded that the plaintiff's continued employment would, in its words, "present an untenable risk to the safety and productivity of other ... employees." Of course, one does not have a constitutional right to threaten one's co-workers.

■ Lastly, this court turns to the separation agreement. The plaintiff was free to reject the separation agreement and file claims against the defendant, as is evidenced by the current lawsuit. Either way, his employment with the defendant would cease. Clearly the plaintiff was not subjected to "discipline or discharge on account of the exercise .... of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of

2. Under this test, a public employee, to make out his *prima facie* case, must prove that: (1) his speech can be fairly characterized as constituting speech on a matter of public concern; and (2) his speech was at least a substantial or motivating factor in the negative employment decision. If the employee proves these two elements, the burden then shifts to the employer who may still avoid liability by proving either that: (1) he would have made the same decision in the absence of the protected conduct; or (2) the employee's conduct interfered with the government agency's effective and efficient fulfillment of its responsibilities to the public. *D'Angelo,* 239 Conn. at 362, 685 A.2d 319.

3. Although *D'Angelo,* concerned a trial on the merits, it governs the showing that a plaintiff must make to overcome a motion for summary judgment.

4. This court notes that in his complaint, the plaintiff alleges only that he was terminated for refusing to sign the separation agreement, and not for his past complaints of discrimination. Generally speaking, it is improper for a plaintiff to expand the scope of his complaint once discovery has closed and the defendant has moved for summary judgment. *See Ansam Assoc., Inc. v. Cola Petroleum,* 760 F.2d 442, 446 (2d Cir. 1985). However, this court finds that even under the plaintiff's most recent explanation for his termination, summary judgment must enter for the defendant.

5. Accordingly, this court need not determine whether these statements were protected under the federal or state constitution.

the constitution of the state." Conn. Gen. Stat. § 31–51q.

For these reasons, the plaintiff's argument that the offer of the separation agreement violated his rights under § 31–51q must fail. This section would be implicated (although not necessarily violated) if an employer had threatened an employee with termination unless he agreed to give up his free speech rights. It does not apply in a case, such as this, in which an employer, who has already decided to terminate an employee for unprotected speech, makes the employee such an offer.

Parenthetically, this court notes that it finds nothing in § 31–51q that precludes such separation agreements. Separation agreements offer valuable benefits to both employees and employers. They are often used to afford employees, who would otherwise be fired, severance pay and favorable personnel records in exchange for a release of claims against the employer and an agreement not to speak disparagingly against the company. They benefit the public by encouraging parties to settle their disputes inexpensively, without burdening administrative agencies and courts. This court is not prepared to extend § 31–51q to defeat such a beneficial arrangement.

It is undisputed that the defendant terminated the plaintiff for speech not protected by either the federal or state constitution. Summary judgment must enter for the defendant.

B. *Attorney's Fees*

A defendant is entitled to an award of attorney's fees and costs if the court finds that a § 31–51q action was brought "without substantial justification." Conn. Gen.Stat. § 31–51q. Although it is clear that the plaintiff's free speech rights were not abridged by the offer of the separation agreement, nor any other action taken by the defendant, this action was not brought with such an absence of substantial justification as to warrant an award of costs and attorney's fees.

## IV. *CONCLUSION*

For the foregoing reasons, the defendant's motion for summary judgment [**Document No. 28–1**] is hereby **GRANTED.** The motion for attorney's fees [**Document No. 28–2**] is hereby **DENIED.**

**It is so ordered.**